IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| WILLIE WILLIAMS, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 08-4900 (JBS/AMD) |
| v. | : | |
| ATLANTIC CITY DEPARTMENT OF POLICE & MICHAEL MAYER, | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Willie Williams, Pro Se
167087A-654023
Central Reception & Assignment Facility
P.O. BOX 7450
West Trenton, NJ 08628

Michael E. Riley, Esq.
Tracy Riley,  Esq.
LAW OFFICES OF RILEY & RILEY
The Washington House
100 High Street
Suite 302
Mount Holly, NJ 08060
    Counsel for Defendant Michael Mayer


**SIMANDLE,** District Judge:

**I.   INTRODUCTION**

     This civil rights matter is before the Court on Defendant
Michael Mayer's motion for summary judgment [Docket Item 17].  As
explained in today's opinion, Defendant is entitled to judgment
as a matter of law because of qualified immunity, so the motion
will be granted.

## II.   BACKGROUND

This is an action filed by Plaintiff, Willie Williams, against a police detective, Michael Mayer, based on an encounter between the two on August 5, 2008.  According to his Complaint, which Plaintiff filed without a lawyer, on August 5, 2008, he was visiting his girlfriend in her apartment when the Atlantic City Police arrived and executed a search warrant.  (Compl. at 3-4.)[1] Plaintiff alleges that when the police entered the apartment, they ordered everyone to the floor and handcuffed them.  (Id.) At some point during the encounter, Plaintiff was personally searched.  (Id.)  Plaintiff's girlfriend's brother, Lavar Jackson, was in a bedroom of the apartment, and when the police searched that bedroom they found drugs and weapons.  When Mr. Jackson refused to admit ownership of the contraband, everyone in the apartment was arrested, including Plaintiff.  (Id.) Plaintiff argues that this arrest was improper.  (Id.)

The Complaint sought damages from the Atlantic City Police Department and Detective Mayer, as well as release from jail. Upon initial screening of the Complaint under 28 U.S.C. § 1915A, which requires the Court to review complaints filed by prisoners seeking redress from a government defendant in a civil action, this Court interpreted the Complaint to be seeking relief

---

[1]   The Complaint does not specify whether the warrant was for arrest or search, but the record evidence indicates that it was a search warrant.

2

pursuant to 42 U.S.C. § 1983 for Fourth Amendment violations.
The Court dismissed the police department because the department
is not a "person" subject to suit under that statute.  [Docket
Item 2, at 1.]  The request for release from confinement was also
dismissed without prejudice to the filing of a petition for
habeas corpus.  [Id. at 1-2.][2]

Detective Mayer moves for summary judgment.  He submits an
affidavit prepared for this motion which incorporates his police
incident report of the events in question.  Additionally,
Plaintiff previously submitted a copy of what appears to be
Detective Mayer's affidavit in support of the search warrant
related to this case, though without any kind of certification or
authentication.  The Court provided to Defendant the opportunity
to object to the Court's consideration of the document on this
motion, and Defendant did not object, so the Court will consider
the document as part of the record on this motion.

The search warrant affidavit describes the basis for
Detective Mayer's belief that he had probable cause to search the
premises.  On July 6, 2008, Mayer was contacted by a confidential
informant, who had provided reliable information in the past.
(Aff. Supp. Search Warrant, at 3.)  The informant said a black
woman was selling cocaine from the apartment where the events of

---

[2]  There is nothing in the record to indicate that Plaintiff
has been convicted of or indicted for any crimes based on
evidence resulting from the challenged arrest.

this case occurred.  (Id.)  The informant agreed to perform some
controlled buys from the woman in the apartment.  On the first
controlled buy, the informant said there was a man present in the
back bedroom.  (Id. ¶ 7.)  The affidavit does not say whether the
informant indicated that any other individuals were in the
apartment during the second buy.  On the third buy, the informant
indicated that there were two men in the living room, in addition
to one in the back room from which the drugs were retrieved.
(Id. ¶ 9.)  Finally, the informant indicated that in the previous
months when the informant had visited the apartment, the
informant had seen "unknown males in the apartment in possession
of handguns."  (Id. ¶ 10.)  The affidavit states that upon this
evidence Detective Mayer had reason to believe, among other
things, that anyone present in the apartment was involved in
illegal activity.  (Id. ¶ 12.)

    Regarding the evidence of what happened during the search,
neither the police report nor Mayer's affidavit prepared for this
motion reference the initial handcuffing or the search of
Plaintiff's person, but the documents otherwise corroborate
Plaintiff's account, adding some details about where certain
contraband was found.  The report relates that while searching
the bedroom, Detective Mayer discovered a black handgun lying on
the top shelf of a doorless closet.  (Mayer Aff. ¶ 5, Ex-A, at
1.)  Detective Mayer also discovered a large white rock behind

4

the water heater which was located in the bedroom closet.  (<u>Id.</u>)
In some unidentified location in the apartment, possibly also in
the bedroom, another detective found a 9mm gun wrapped in a
blanket inside a vinyl bag.  (<u>Id.</u>)  In some unidentified place in
the bedroom, officers also found three digital scales.  (<u>Id.</u>)
Finally, Detective Mayer located a small bag of green leafy
vegetation on the floor of the bedroom.  (<u>Id.</u>)

According to the report, because none of the individuals
present in the apartment admitted ownership of the suspected
contraband, Detective Mayer arrested everyone in the apartment
for possession of cocaine with intent to distribute, possession
of marijuana, possession of paraphernalia (the scales), and
possession of the two handguns without a permit.  (<u>Id.</u>, at 1-2.)
Defendant argues that these undisputed facts demonstrate that he
had probable cause for the arrest of Plaintiff, and that he is
protected by qualified immunity even if the arrest was improper.
Plaintiff did not respond to the motion.


III.  DISCUSSION

A.  Summary Judgment Standard

Summary judgment is appropriate when the materials of record
"show that there is no genuine issue as to any material fact and
that the moving party is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(c)(2).  A dispute is "genuine" if "the

evidence is such that a reasonable jury could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id.

Plaintiff's failure to respond to the motion does not mean summary judgment is warranted.  See Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990).  The Court must still determine, even for an unopposed summary judgment motion, whether the motion sets out facts such that granting it is "appropriate," as required by Rule 56(e), Fed. R. Civ. P.  Id. at 176.

Defendant has failed to file a Statement of Material Facts Not in Dispute as required by Local Civil Rule 56.1(a). Normally, as the rule itself indicates, the consequence of non-compliance is denial of the motion.  Id.  However, this case warrants an exception.  See Pipko v. CIA, 312 F. Supp. 2d 669, 675 (D.N.J. 2004) (granting an exception in similar circumstances).  This motion relies largely on the facts as alleged in the complaint, which facts are very circumscribed, and laid out point-by-point in the affidavit and incident report accompanying the motion.  Although the movant has not used the precise format of L. Civ. R. 56.1(a), the point-by-point affidavit suffices for the purpose of placing Plaintiff on notice

of the essential and undisputed facts upon which the motion
rests, resulting in no prejudice to Plaintiff.  The Court finds
it to be in the interests of justice to excuse non-compliance by
finding substantial compliance with the rule in this instance.

Because Plaintiff has not opposed this motion, the Court
"will accept as true all material facts set forth by the moving
party with appropriate record support," <u>Anchorage Assocs. v.
Virgin Islands Bd. of Tax Rev.</u>, 922 F.2d 168, 175 (3d Cir. 1990),
and determine whether a reasonable jury could return a verdict
for Plaintiff upon those facts.


**B.  Analysis**

    <u>1.  Probable Cause and Qualified Immunity</u>

The Court reads the complaint as attempting to state a claim
under the Fourth Amendment and § 1983 based on the arrest of
Plaintiff for possession of all the contraband.[3]  The Fourth
Amendment provides: "The right of the people to be secure in
their persons, houses, papers, and effects, against unreasonable
searches and seizures, shall not be violated, and no Warrants
shall issue, but upon probable cause, supported by Oath or
affirmation, and particularly describing the place to be

---

[3]  Plaintiff's Complaint was filed using a standardized form
for prisoners filing a complaint under 42 U.S.C. § 1983.
Although it does not refer to the Fourth Amendment, it does
complain that the arrest was "without cause."  (Compl. at 3.)

searched, and the persons or things to be seized."  U.S. Const.
amend. IV.   An individual harmed by a violation of the Fourth
Amendment may bring an action under 42 U.S.C. § 1983, a statute
enacted as part of the Civil Rights Act of 1871.[4]

A warrantless arrest performed inside a home when officers
are present pursuant to a lawful search warrant requires probable
cause.  U.S. v. Winchenbach, 31 F. Supp. 2d 159, 166 (D. Me.
1998) (citing Jones v. City and County of Denver, Colo., 854 F.2d
1206, 1209 (10th Cir. 1988) and Mahlberg v. Mentzer, 968 F.2d
772, 774-75 (8th Cir. 1992), cert. denied, 506 U.S. 1026 (1992)).
Probable cause exists when, based on the factual circumstances, a
prudent person could believe that a particular suspect has
committed or is committing an offense.  Sharrar v. Felsing, 128
F.3d 810, 817-18 (3d Cir. 1997).  Although probable cause is
based on what that legal fiction, the "prudent person," could
conclude from a set of facts, the concept attempts to account for
the practical considerations of everyday life on which reasonable

---

[4]   Section 1983 provides in relevant part:
          Every person who, under color of any statute,
          ordinance, regulation, custom, or usage, of
          any State or Territory ... subjects, or causes
          to be subjected, any citizen of the United
          States or other person within the jurisdiction
          thereof  to  the  deprivation  of  any  rights,
          privileges,  or  immunities  secured  by  the
          Constitution and laws, shall be liable to the
          party injured in an action at law, suit in
          equity,  or  other  proper  proceeding  for
          redress.
42 U.S.C. § 1983.

people, not legal technicians, act.  Illinois v. Gates, 462 U.S. 213, 231-32 (1983) (citations omitted).  Because probable cause is so fact-specific, it is not readily reduced to a neat set of legal rules.  Id. at 232.

In addition to probable cause itself being a flexible, fact-driven standard that is deferential to the officers who must make these difficult judgments in the real world, even if Defendant was mistaken about the existence of probable cause, he may nevertheless be immune from suit if he made a reasonable mistake about the existence of probable cause.  Suits against state officials in their personal capacity can cause these officials "to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct,"  Forrester v. White, 484 U.S. 219, 223 (1988), so the Supreme Court has crafted a doctrine of qualified immunity to protect government officials from undue influence from the risk of suit.  It applies to government officials like police officers who are not protected from claims arising out of federal law by absolute immunity but who perform certain discretionary duties requiring some protection from lawsuits.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity strikes a balance between absolute immunity and no immunity by permitting a plaintiff to recover for

constitutional violations where a governmental defendant was
"plainly incompetent or . . . knowingly violate[d] the law,"
while immunizing a state officer who "made a reasonable mistake
about the legal constraints on his actions." Curley v. Klem, 499
F.3d 199, 206-07 (3d Cir. 2007) (internal quotations and
citations omitted).  A mistake is not reasonable when it amounts
to the violation of a "clearly established" right, such that "it
would be clear to a reasonable officer that his conduct was
unlawful in the situation he confronted." Curley, 499 F.3d at
207 (internal quotations and citations omitted).[5]

     That the arrest of Plaintiff required probable cause is
clearly established law.  Sharrar, 128 F.3d at 817-18.[6]  However,
the analysis of qualified immunity is not satisfied simply by
observing that it is clearly established that an arrest without
probable cause is unlawful.  Instead, the Court must determine
whether it would be clear to a reasonable officer that his
conduct was unlawful under the circumstances of the case.

_____

     [5]  While under Saucier v. Katz, 533 U.S. 194 (2001), whether
a right was clearly established was assessed only if the
plaintiff had adequately alleged a violation in the first place,
the Supreme Court adopted a more flexible approach in Pearson,
permitting either prong to be assessed first.  Pearson v.
Callahan, 129 S.Ct. 808, 817 (2009).

     [6]  To the extent there is any question about what was
required to make the arrest lawful, it is over whether an arrest
warrant is also required for an arrest in a home, or whether the
search warrant to enter the home was sufficient.  See
Winchenbach, 31 F. Supp. 2d at 166.

<u>Saucier</u>, 533 U.S. at 202.  That does not mean that Defendant is protected so long as no court has adjudicated the exact facts of this case; it means that the unlawfulness of the action under the facts of this case must be apparent in light of pre-existing law. <u>Kopec v. Tate</u>, 361 F.3d 772, 784 (3d Cir. 2004).  The Court is required to define the right allegedly violated at "the appropriate level of specificity" in order to determine whether a reasonable officer would have understood the unlawfulness of the action.  <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999).

In this case, the offenses that Detective Mayer suspected had been committed by Plaintiff were offenses involving possession of contraband.  Possession is defined in the same way for all of the offenses, which is the same way it is defined under federal law.  As to the drug offenses, New Jersey prohibits "any person, knowingly or purposely, to . . . possess, actually or constructively, a controlled dangerous substance."  N.J. Stat. Ann. § 2C:35-10(a)(1).  An individual "constructively possesses" a controlled dangerous substance when the circumstances permit a reasonable inference that the individual has knowledge of its presence, and intends and has the capacity to exercise physical control or dominion over it during a span of time.  <u>State v. Reeds</u>, 962 A.2d 1087 (N.J. 2009).  For the gun offense, a person is guilty if he "knowingly has in his possession any handgun . . . without first having obtained a permit."  N.J. Stat. Ann. §

2C:39-5.  Knowing possession of the handgun requires the same knowledge and dominion and control as possession for the drug offense.  See State v. Latimore, 484 A.2d 702 (N.J. Super. Ct. App. Div. 1984), cert. denied, 501 A.2d 978 (N.J. 1984), overruled on other grounds by, State v. Camacho, 707 A.2d 455 (1998).  Thus, probable cause in this case is based on the facts known to Defendant at the time of the arrest that suggest that Plaintiff could have been reasonably expected to have knowledge of the contrabands' presence, and intended and had the capacity to exercise physical control or dominion over it.

Putting together all of the above — the standard for qualified immunity, the definition of probable cause, and the elements the crimes of which Plaintiff was suspected of committing — assessment of qualified immunity at the appropriate level of specificity means the Court must determine the following question:  Could a reasonable officer have believed that the existence of contraband in locations in the apartment not visible from common areas, combined with the officer's belief that the apartment was being used for regular drug sales, presented a sufficient likelihood that Plaintiff, who was in the apartment where these items were found with other individuals, could be reasonably expected to have knowledge of the contraband's presence, and intended and had the capacity to exercise physical control or dominion over it?  The answer, as explained below, is

12

that a reasonable officer could have believed this.

### 2. A reasonable officer could have believed that there was probable cause for the arrest of Plaintiff

It is clearly established that probable cause for the arrest of individuals in a household based on the presence of contraband depends on there being some fact suggesting knowledge of the contraband above and beyond the individual's mere presence in the household.  See Holmes v. Kucynda, 321 F.3d 1069, 1081 (11th Cir. 2003);  United States v. Anderson, 981 F.2d 1560, 1566 (10th Cir. 1992)  United States v. Robertson, 833 F.2d 777, 782 (9th Cir. 1987); Wayne R. LaFave, 2 Search & Seizure §§ 3.6, 4.9 (4th ed.). This precedent is rooted in the Supreme Court's decisions in Ybarra v. Illinois, 444 U.S. 85 and United States v. Di Re, 332 U.S. 581 (1948), which together stand for the proposition that mere presence at the location of illegal activity is not alone sufficient to establish the kind of particularized suspicion necessary for probable cause.  Whenever a court has found probable cause in these cases, it has relied on factors beyond mere presence.  U.S. v. Heath, 455 F.3d 52, 57-58 (2d Cir. 2006); United States v. Jones, 72 F.3d 1324, 1332-33 (7th Cir. 1995); United States v. Solomon, 29 F.3d 961, 963 n.1 (5th Cir. 1994); United States v. Holder, 990 F.2d 1327, 1329 (D.C. Cir. 1993); United States v. Pace, 898 F.2d 1218, 1240 (7th Cir. 1990).

13

Thus, if the only fact supporting Plaintiff's arrest was the
presence of contraband that was not in plain view from common
areas of the apartment, then probable cause would have been
lacking and no reasonable officer could have thought it was
present.

Here, however, there is the additional factor that the
officers reasonably believed that the premises were the location
of frequent drug activity.  The nature of the evidence in this
case — the presence of greater than a half-ounce of cocaine, two
unregistered handguns, and digital scales — in addition to the
three controlled buys in the weeks before the search, during
which the same pattern of conduct occurred, suggest a routine
business of drug sales in the apartment.

Under some circumstances, presence in an apartment being
used for regular drug distribution is a sufficient basis for
probable cause to arrest for possession, as distinct from mere
presence in an apartment in which contraband is discovered,
because those permitted to be present at a location of frequent
drug activity are less likely to be innocent visitors to the
private space.  See Pace, 898 F.2d at 1240 ("The police observed
both Pace and Besase exiting rooms in which the police found
large amounts of either cocaine or money.  This, along with the
fact that Savides trusted Pace and Besase enough to have them at
his home with the money and cocaine out in the open, could lead a

14

reasonable person to conclude that it was reasonably probable that Pace and Besase were involved in a large-scale cocaine deal with Savides."). Unlike Pace, there is no suggestion in this case that Plaintiff was actually present during a drug sale, or that he was in the room where the contraband was kept. Nor was the contraband in plain view, as in Pace. But the general rationale regarding the circumstances under which drug dealers permit others to remain on the premises is sound and applicable, especially where Plaintiff admits to a relationship with the woman present in the apartment, who Detective Mayer may have reasonably believed to be the same woman described by the informant.

When assessing qualified immunity, the Court would normally address the question of whether a constitutional violation has been stated, and then ask whether the officer was entitled to immunity based on what a reasonable officer could have believed. This order of operations aids the development of constitutional rules for police conduct and is often logically necessary since the assessment of the reasonableness of the action usually requires a searching inquiry into the first-order question of whether a violation is even stated. But here, the existence of probable cause is a close enough call that the second question is much easier to answer than the first. And, more importantly, Plaintiff has not opposed the motion and Defendant's briefing is

15

sparse, so any advancement of the constitutional jurisprudence would be upon a weak foundation in this case.

Thus, although the Court does not hold that Detective Mayer in fact had probable cause in this case, the Court does find that he is entitled to qualified immunity.  A reasonable officer could have concluded he had probable cause to arrest Plaintiff based on his presence in an apartment, in which he executed a search warrant and found drugs and other contraband, and which it appears was the location of frequent drug sales.  That is all that is needed for qualified immunity.

## IV.  CONCLUSION

Detective Mayer could have reasonably believed that Plaintiff's presence in the apartment was sufficient to establish probable cause for possession because of the evidence indicating the frequent use of the premises for drug transactions. Detective Mayer may have been incorrect about this basis for probable cause, but he was not plainly incompetent or knowingly violating the law, so he is protected by qualified immunity. Curley, 499 F.3d at 206-07.


**June 2, 2010**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              United States District Judge